IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Elridge V. Hills, #256906, ) | C/A No.: 4:05-0319-JFA-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| The South Carolina Department of ) | |
| Corrections; Jon E. Ozmint, Director, ) | |
| SCDC Director; Gary A. Boyd, Director of ) | |
| Inmate Services; David M. Tatarsky, ) | |
| Deputy General Counsel; Mary Coleman, ) | |
| Inmate Grievance Branch Chief; Betty ) | |
| Robinson, Administrative Coordinator of ) | |
| Program Services; Oscar A. Faulkenberry, ) | |
| Warden-Kershaw Correctional Institution; ) | |
| Calvin Anthony, Lee Correctional ) | |
| Institution Warden; Charles Burton, ) | |
| Lee Correctional Institution Associate ) | |
| Warden; Kershaw ) | |
| Correctional Institution Officer Adams ) | |
| (First Name Not Applicable); Barbara ) | |
| Ricketson, Lee Correctional Institution ) | |
| Mailroom Clerk; Donna Mitchell, Lee ) | |
| Correctional Institution Institutional ) | |
| Inmate Grievance Coordinator (Formerly ) | |
| Ker. C.I.'s Inmate Coordinator); Donald ) | |
| Dease, Former Institutional Division II ) | |
| Director; Gary D. Maynard, Former SCDC) | |
| Director; John E. Lane; Former Kershaw ) | |
| Correctional Institution Mailroom ) | |
| Supervisor; Nikki McCougar, Former ) | |
| Kershaw Correctional Institution Mailroom ) | |
| Clerk; Shari Hinson,   Kershaw Correctional) | |
| Institution Mailroom Clerk; Tony L. ) | |
| Strawhorn, Program Services Deputy ) | |
| Director; and William L. Eagleton, ) | |
| Program Services Deputy Director; ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## I.  PROCEDURAL BACKGROUND

The plaintiff, Elridge V. Hills ("plaintiff/Hills"), filed this action under 42 U.S.C. § 1983[1] on February 4, 2005.  At all times relevant to the allegations in the plaintiff's complaint, he was an inmate with the South Carolina Department of Corrections ("SCDC"). Plaintiff alleges that his constitutional rights were violated. On October 28, 2005, the defendants filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure  along with a memorandum and affidavits in support of that motion. (Doc. #39).  Because the plaintiff is proceeding pro se, he was advised on or about October 31, 2005, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in dismissal of his complaint.  The plaintiff filed a response on December 12, 2005.

Plaintiff filed a motion for summary judgment on November 15, 2005. (Doc. #45). Defendants filed a response in opposition on December 5, 2005.

## II.  DISCUSSION

### A.   FACTUAL ALLEGATIONS

The plaintiff alleges violations of his First and Fourteenth Amendments for failure to deliver his incoming magazines which were found to be sexually explicit publications and for depriving him the right to mail correspondence. Plaintiff has also alleged tort claims for property deprivation and

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

2

gross negligence pursuant to the South Carolina Tort Claims Act.

Plaintiff alleges "a deprivation of incoming heterosexually explicit publications via magazines and also of outgoing and incoming correspondence regarding the same." (Complaint). Plaintiff alleges that on March 12, 2001, the eight heterosexually explicit pornographic magazines that he had ordered from PaperWings Publishing were shipped to him at Kershaw Correctional Institution. Plaintiff alleges that on March 16, 2001, he received notice that the magazines were being withheld and forwarded to the Correspondence Review Committee ( hereinafter "CRC") for review. (Complaint). Plaintiff asserts that on September 4, 2001, he received notification that the CRC had reviewed the eight magazines and found them to be sexually explicit and their introduction into the facilities would have a negative impact on the departments legitimate penological interest of discipline, order, public safety, and rehabilitation and they were returned to the sender. Plaintiff admits that "with notification of the same, Betty Robinson also informed me of the fact that I can grieve this said decision but I did not receive this overall notification from Betty Robinson via the Ker.C.I. mailing system until sometime in late November 2001." (Complaint). In his complaint, plaintiff asserts that he sent several correspondence to different people regarding these issues but did not file a grievance until sometime in February 2002. Plaintiff alleges that he did not receive a response. (Plaintiff's complaint ).

Further, plaintiff alleges that on August 1, 2003, personnel in the mailroom would not mail his correspondence to PaperWings Publishing. Plaintiff filed a grievance on August 4, 2003, wherein plaintiff stated that he requested mailroom personnel to debit his inmate trust account for the postage. Plaintiff asserts that it was improper and against policy for SCDC personnel not to do as he requested. (Affidavit of Mary Coleman; Step 1 grievance).

Defendants argue that SCDC policy provides that an inmate's trust account cannot be debited to mail additional personal correspondence when his account balance is equal to or less than the indigency amount of $6.43. (SCDC Policy PS-10.08 33.3.3). Defendants assert that documentation showed that plaintiff's account was below the indigency level on August 1, 2003. Plaintiff received the SCDC's final decision denying this grievance on March 11, 2004. (Affidavit of Mary Coleman).

Plaintiff ordered more sexually explicit magazines again in 2004 entitled "Black Child," "Asian Girls," "Nasty," "Players" (two volumes), and "Black Lust." (Affidavit of Gary A. Boyd; Inmate Correspondence). Based on the evidence submitted by defendants, the magazines were again reviewed and determined sexually explicit. Plaintiff received notification of this decision dated October 26, 2004, and the magazines were returned to the publisher. (Affidavit of Gary A. Boyd; Inmate Correspondence). Defendants assert that plaintiff filed a grievance with regard to the denial of the pornographic magazines on December 6, 2004, after the magazines were rejected for the second time. (Affidavit of Mary Coleman). Plaintiff received the SCDC's final decision denying his grievance on July 5, 2005. (Affidavit of Mary Coleman). At the bottom of the decision, it informed plaintiff that he could appeal the decision under the APA to the Administrative Law Court within 30 days of receipt.

### B. STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function

4

is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### C.  STATUTE OF LIMITATIONS

First defendants raise the defense of statute of limitations. Specifically, defendants argue that

the complaint should be dismissed for failure to file this suit within the applicable statute of limitations' period.

It is settled that there is no federal statute of limitations for §1983 actions. Instead, the analogous state statute governing personal injury actions applies in section 1983 cases. *See* Wilson v. Garcia, 471 U.S. 261 (1985). The statute of limitations for section 1983 causes of action arising in South Carolina is three years. *See* S.C. Code Ann. § 15-3-530(5); *see also* Simmons v. South Carolina State Ports Auth., 694 F.2d 64 (4th Cir. 1982) (citing to previous version of statute); Heyward v. Monroe, 166 F.3d 332 (4th Cir. 1998)(unpublished) (Table). Under South Carolina statute 15-3-535, "the statute of limitations is triggered not merely by knowledge of an injury but by knowledge of facts, diligently acquired, sufficient to put an injured person on notice of the existence of a cause of action against another." True v. Monteith, 327 S.C. 116, 120, 489 S.E.2d 615, 617 (1997)(professional malpractice case).

After reviewing plaintiff's complaint and attachments and the affidavits and memorandum submitted by defendants, the undersigned concludes that one of plaintiff's allegations is barred by the statute of limitations. Plaintiff alleges that the magazines he ordered in 2001, were detained by the mailroom personnel who forwarded them to the CRC for review in violation of his constitutional rights. Defendants assert that plaintiff admits he received a letter

from the Division of Inmate Services explaining the decision to deny the magazines in November 2001.  Plaintiff alleges that he attempted to file a grievance on February 19, 2002. (Complaint). Plaintiff alleges that he did not receive a response to this grievance. However, as pointed out by

defendants, SCDC policy requires that grievances be submitted within fifteen days of the incident. Therefore, the grievance was not properly or timely filed to toll the running of the statute of limitations. Plaintiff did not file this action in federal court until January 20, 2005 (Houston v. Lack delivery date). Therefore, this allegation pertaining to the 2001 magazines is barred by the statute of limitations. The remaining allegations are not barred by the statute of limitations. In the alternative, the undersigned concludes that this issue has not been properly exhausted. *See* Woodford v. NGO, 2006 WL 1698937 (U.S.).

### D.  EXHAUSTION

Defendants argue that plaintiff's claims should be dismissed for failure to exhaust his administrative remedies. Defendants assert that plaintiff must exhaust all administrative remedies before filing suit complaining of conditions of confinement. Defendants contend that the South Carolina Supreme Court has outlined the procedure a state prisoner must follow to obtain a review of an SCDC decision in non-collateral or administrative matters citing Al-Shabazz v. State, 338 S.C. 354, 376, 527 S.E.2d 742, 749 (2000). Defendants state that once the SCDC makes its final decision, the inmate has the right, in certain cases, to appeal to the State Administrative Law division and thereafter to the South Carolina Circuit Court, Court of Appeals and Supreme Court.

As to plaintiff's allegation concerning the denial of his magazines on June 14, 2004, plaintiff filed a Step 1 grievance on December 6, 2004. The Warden responded to the Step 1 grievance on January 4, 2005, and plaintiff filed a Step 2 grievance on January 18, 2005. Plaintiff received the decision on July 5, 2005. There is no evidence that plaintiff filed an appeal with the Administrative

Law Judge Division. Therefore, the undersigned finds that plaintiff has not exhausted this issue.[2]

With respect to plaintiff's allegation regarding two letters he alleges the mailroom refused to mail, plaintiff filed a Step 1 grievance on August 4, 2003. Plaintiff received the Warden's response denying the grievance on August 19, 2003, and filed a Step 2 grievance on August 26, 2003. Plaintiff received the SCDC's decision on March 11, 2004. There has been no evidence presented that the plaintiff filed an appeal with the Administrative Law Judge Division. Therefore, the undersigned concludes that this issue has not been exhausted.

In the recent United States Supreme Court case, Woodford v. NGO, supra, the Court held that the PLRA exhaustion requirement requires proper exhaustion. Within the decision, the Court stated that "Administrative law requires proper exhaustion of administrative remedies which 'means using all steps that the agency holds out, and doing so properly.' *Pozo v. McCaughtry*, 286 F.3d 1022, 1024." Id. A review of the SCDC Policy/Procedure with regard to

the Inmate Grievance System reveals the requirements of the Step 1 and Step 2 Grievance forms. It is noted that if the grievance is denied at Step 1, the policy/procedure states that "if the grievant is not satisfied with the decision of the Warden, the grievant **may** (emphasis added) next appeal to the Division Director of Operations for final resolution of the grievance." SCDC Policy/ Procedure GA-.01.12, Inmate Grievance System. If the Step 2 grievance is denied, then the Policy/ Procedure states the following with regard to the Administrative Law Judge Division:

---

[2] Additionally, plaintiff filed this complaint on February 4, 2005, while his Step 2 grievance was still pending. Thus, the undersigned finds that plaintiff had not exhausted the Step 2 grievance procedure at the time of filing his complaint with regard to this allegation. In considering dispositive motions based upon the plaintiff's failure to exhaust under section 1997e(a), it appears that the court should look to the time of filing, not the time the court is rendering its decision, to determine if exhaustion has occurred. *See Charles v. Ozmint*, 2006 WL 1341267 (D.S.C. 2006).

    13.7    There are five (5) grievance issues that an inmate may appeal to the South Carolina Administrative Law Judge Division. If an inmate wishes to appeal to the South Carolina Administrative Law Judge Division, s/he **may** only appeal final Department Decisions on the following five (5) issues:

        13.7.1  if the inmate's accrued good time has been taken as a result of a disciplinary hearing;

        13.7.2  the calculation of a sentence;

        13.7.3  the calculation of sentence related credits

        13.7.4  custody determinations that may be grieved under this policy/procedure; or

        13.7.5  Allegations of deprivations that would rise to the level of constitutional violations, and where harm or injury is alleged, it must be more than a minor harm or minor injury.

    13.8    If the grievance is not about one of these five (5) issues, the Department's final response will end the grievance process.

SCDC Policy/Procedure; Inmate Grievance System 2002, 2004, and 2006. (The 2002 policy has the above listed under Section 14). (Emphasis added).

Therefore, the language states that after Step 1, the griever *may* appeal by filing a Step 2 grievance. If the grievance is denied at Step 2 and is one of the five issues listed under Administrative Law Judge Division, the grievant *may* appeal to the South Carolina Administrative Law Judge Division to continue the grievance process. If the grievance is not one of the five issues listed, the Department's final response will end the grievance process. Since plaintiff's issues are listed as one of the five issues, plaintiff would have needed to file an appeal to the Administrative Law Judge Division to continue the exhaustion process. However, since he did not file an appeal to the ALJD on any of his allegations in this case, the allegations are not properly exhausted and the complaint should be dismissed without prejudice.

To the extent plaintiff contends he has a state law claim, it is recommended that this court

9

decline jurisdiction. This Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

Additionally, it is recommended that plaintiff's motion for summary judgment be denied and all outstanding motions be deemed moot based on the above.

### III. CONCLUSION

As set out above, it is RECOMMENDED that defendants' motion for summary judgment (doc. # 39) be GRANTED, but only to the extent that the first allegation be dismissed as barred by the statute of limitations and the remaining allegations be dismissed without prejudice for failure to exhaust his administrative remedies. Further,

It is RECOMMENDED that the motion filed by the plaintiff for summary judgment be DENIED and all other outstanding motions be deemed MOOT.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

July 20, 2006
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

### Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
### &
### The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. See Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. See Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317Florence, South Carolina  29503

11